UNITED STATES TRUST CO. v. HART et al.

(Supreme Court, Appellate Division, First Department.　May 3, 1912.)

1. DOMICILE (§ 1*)—DEFINITION.

One's domicile is the place where he has his true, fixed, permanent home and principal establishment, to which whenever he is absent he has an intention of returning.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, pp. 2168–2179; vol. 8, pp. 7641–7642.]

2. DOMICILE (§ 6*)—WHAT LAW GOVERNS.

For the purpose of succeeding to property rights, a person must have a domicile; but he can have but one.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 4; Dec. Dig. § 6.*]

3. DOMICILE (§ 8*)—ACQUISITION—PRESUMPTIONS—BURDEN OF PROOF.

The domicile of origin is presumed to continue until a new one is acquired, and the burden of proof rests on the party alleging a change of domicile.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 36, 37; Dec. Dig. § 8.*]

4. DOMICILE (§ 4*)—"CHANGE OF DOMICILE"—ACTS CONSTITUTING.

To effect a change of domicile for the purpose of succession, there must be a change of residence and an intention to abandon the former domicile, and acquire another as the sole domicile.　Length of residence alone does not effect a change, nor does intention alone do it.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 2, pp. 1051–1059; vol. 8, p. 7599.]

5. DOMICILE (§ 6*)—ACQUISITION—CHANGE OF DOMICILE—EVIDENCE.

A person born in Virginia in 1836 removed with his parents to New York City in 1859, where he resided and actively engaged in business until 1870.　From then until 1880 he took frequent trips abroad.　From 1880 until his death he spent most of his time in Paris, where he had a residence, returning to the United States from time to time.　While living in Paris he became a member of the American Colony, and purchased a burial lot in the American Cemetery, in which he was buried.　He voted in New York in 1875, 1876, and 1877.　He kept substantially all of his property, except a house and furniture, in New York.　He did not renounce his citizenship nor take any steps to become a citizen of France. In several wills made from 1887 to 1898, and a codicil executed in 1905, he described himself as domiciled in New York.　In a deed executed in 1894 he described himself as a citizen of New York, temporarily residing in Paris.　In 1907, in testifying under a commission issued out of the Supreme Court of New York, he stated that his residence was in New York.　In 1904 he declared, for the purpose of getting his baggage through the port of New York, that he was a resident of France.　*Held*, that he died domiciled in New York.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 4; Dec. Dig. § 6.*]

Appeal from Trial Term, New York County.

Action by the United States Trust Company, as executor of Benjamin Hart, deceased, against Benjamin Hart and others, for the construction of the will of deceased.　From a judgment construing the

will, Isabelle Lucchesi Guillemin and Grace Seeley Hiller, as execu-
trix of Estelle Kitty Wright, deceased, separately appeal.  Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and MILLER, JJ.

Donald Harper, of New York City, for appellant Guillemin.

Franklin Bien, of New York City, for appellant Hiller, as executrix,
etc.

George L. Shearer, of New York City, for respondent United
States Trust Co.

Frederic R. Coudert, of New York City, for respondents Hart &
Nathan.

McLAUGHLIN, J.   This action was brought to settle certain
claims made concerning the administration and distribution of the
estate of Benjamin Hart, deceased.   The judgment appealed from
determined, among other things, that the will and codicils of the tes-
tator should be construed and effect given to them in accordance with
the laws of the state of New York.   Two separate appeals were taken
from the judgment—one by the defendant Guillemin and the other by
the defendant Hiller, as executrix of Estelle Kitty Wright, deceased.
On the argument several interesting questions were discussed by the
respective counsel, but the conclusion at which I have arrived renders
it unnecessary to consider but one, viz., whether the testator at the
time of his death was domiciled in the state of New York.   If he
were, then the judgment is right and should be affirmed; otherwise,
it should be reversed and a new trial ordered.

The determination of a person's domicile is many times difficult.
This follows because it depends upon intention to be ascertained from
facts which necessarily are so different in each case that precedents
are of little assistance.

[1] It has been defined as the place where one has "his true, fixed,
permanent home and principal establishment, to which whenever he
is absent he has an intention of returning."   Story, Conflict of Laws
(8th Ed.) p. 41.

[2, 3] It is the well-settled law, at least in this state, that for the
purpose of succeeding to property rights a person (a) must have a
domicile somewhere; (b) that he can have but one; (c) that the dom-
icile of origin is presumed to continue until a new one is acquired
(Dupuy v. Wurtz, 53 N. Y. 556); and (d) that the burden of proof
rests upon the party alleging a change of domicile (Matter of New-
comb, 192 N. Y. 238, 84 N. E. 950).

[4] In view of the importance, as well as the difficulty, of deter-
mining with any degree of accuracy where a person was domiciled
at a given time, certain fundamental rules have been established which,
when the facts are ascertained, are to be applied.   Thus in Dupuy v.
Wurtz, supra:

"To effect a change of domicile for the purpose of succession there must
be not only a change of residence, but an intention to abandon the former
domicile and acquire another as the sole domicile.   There must be both resi-
dence in the alleged adopted domicile and intention to adopt such place of res-
idence as the sole domicile.  Residence alone has no effect per se, though it

may be most important as a ground from which to infer intention. Length of residence alone will not effect the change. Intention alone will not do it, but the two taken together do constitute a change of domicile."

And in the Matter of Newcomb, supra:

"The existing domicile, whether of origin or selection, continues until a new one is acquired, and the burden of proof rests upon the party who alleges a change. The question is one of fact rather than law, and it frequently depends upon a variety of circumstances which differ as widely as the peculiarities of individuals. Less evidence is required to establish a change of domicile from one state to another than from one nation to another. In order to acquire a new domicile, there must be a union of residence and intention. Residence without intention, or intention without residence, is of no avail. Mere change of residence, although continued for a long time, does not effect a change of domicile while a change of residence even for a short time, with the intention in good faith to change the domicile, has that effect."

The English rule is even stronger than our own. Lord Cranworth in Moorhouse v. Lord, 10 H. L. C. 272, said:

"In order to acquire a new domicile, * * * a man must intend quatenus in illo exuere patriam. * * * It is not enough that you merely mean to take another house in some other place, and that on account of your health or for some other reason you think it tolerably certain that you had better remain there all the days of your life. That does not signify. You do not lose your domicile of origin or your presumed domicile merely because you go to some other place that suits your health better, unless, indeed, you mean either on account of your health or for some other motive to cease to be a Scotchman and become an Englishman or a Frenchman or a German. In that case, if you give up everything you left behind you and establish yourself elsewhere, you may change your domicile."

This rule was reiterated in Huntley v. Gaskell (1906 Appeal Cas. 56), where Lord Halsbury, after referring with approval to the opinion of Lord Cransworth in Moorhouse v. Lord, supra, said that one, in order to change his domicile, "must have a fixed intention or determination to strip himself of his nationality, or, in other words, to renounce his birthright in the place of his original domicile."

[5] Applying the foregoing rules to the undisputed facts in the case before us, I am unable to see how one can seriously question that the testator's domicile at the time of his death was in New York. He was born about 1836 in Virginia and there remained until 1859, when, with his father and mother, he removed to 118 Madison avenue, New York City, where he lived until the death of his father and mother; the former occurring in 1862 and the latter in 1878. Shortly after the death of his mother, he took up his residence at the Manhattan Club in the city of New York, remaining a member thereof until the time of his death. After taking up his residence in New York, he was actively engaged in business until about 1869 or 1870, and from then on until about 1880 took frequent trips abroad. From 1880 (he having in the meantime retired from business) until his death he spent most of his time in Paris, where he had a residence, returning to America from time to time. The last trip he made was in 1904. In 1881 he married the defendant Wright in London, but in the early part of 1883 he returned to New York, where, in May of that year he procured a judgment of divorce from her. Some time prior to 1892 he took into his household in Paris the defendant Guillemin, then

a child. In the early part of the year 1892 he returned to New York, where he adopted her according to the statutes of the state under the name of Isabelle Hart. While living in Paris he became a member of the "American Colony," and purchased a burial lot in the "American Cemetery" in which he was subsequently buried. He voted in the city of New York in 1875, 1876, and 1877. He kept substantially all of his property, except his house and furniture in Paris, in New York, and every will, with possibly one exception, which related to real estate in Paris, was in the English language, drawn according to a form well recognized in the state of New York, and selected a domestic corporation as executor and trustee, giving it power to invest his residuary estate in "first bond and mortgage on improved real estate in the city of New York." Such wills were invariably kept in the state of New York. He never renounced his citizenship, nor did he take any steps to become a citizen of France or to enjoy civil rights in that country by complying with section 13 of the Code of Napoléon.

These acts are inconsistent with an intention on his part to change his domicile. The fact that he resided in Paris most of the time from 1880, while important to be considered, certainly is not controlling, because domicile may exist without actual residence, but never without intention. De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996, 17 Am. St. Rep. 652. One's acts are always much more satisfactory as evidence of intention than his declarations and written declarations are considered stronger than oral ones.

Considerable evidence was offered on the one side of the testator's declarations showing that he intended to retain his New York domicile, and, on the other, that he intended to give it up and acquire one in France. Taking all of this evidence into consideration, it so strongly preponderates in favor of a New York domicile that a finding to the contrary would be against the weight of evidence. In wills made in 1887, 1888, 1894, and 1896 he describes himself as domiciled in the state of New York. In the will and each of the codicils admitted to probate, and here under consideration, the will dated January 22, 1898, and the last codicil September 20, 1905, he described himself as a "citizen of the United States of America, domiciled in the state of New York and temporarily residing in the city of Paris, France." At the time of the marriage of his adopted daughter in 1894, by a deed of trust, he settled upon her $400,000, and in that deed he is described as a citizen of the city, county, and state of New York, temporarily residing at 29 Rue Galilee in the city of Paris. He is described in the same way in two powers of attorney executed in March and June, 1891. In 1904, while in America, he obtained a passport for use while traveling abroad, and in his application for the same stated he was domiciled in the United States with his permanent residence in the city of New York; that he was going abroad temporarily, and intended to return to the United States in about two years. At that time he took a formal oath of allegiance to the United States. In 1907, in testifying under a commission issued out of the Supreme Court of the state of New York to take his testimony in Paris, he stated his residence was in the state of New York, but he was living in Paris. Substantially the only written declaration that is produced

in opposition to the above is one made by the testator for the purpose of getting his baggage through the port of New York in 1904, when he stated that he was a resident of France. But this declaration is easily explainable by the fact that persons who at the time the declaration was made had been abroad two years or more, and had during that time a fixed place of abode, were considered nonresidents within the meaning of the Customs Law, and this for the sole purpose of determining whether or not duty should be collected. Customs Regulations (Ed. 1899) p. 197.

It would serve no useful purpose to review at length here the evidence offered as to his oral declarations or declarations written to friends as to his interest in the United States and its affairs, or statements to his friends in Paris as to his enjoying Parisian life and his love for its laws in preference to those of the United States, and that he intended to always live there. The fact is that in every formal act of his life, so far as appears, where it became necessary for him to state his domicile, he invariably claimed it as the state of New York, and not France. Unless one's domicile can be changed for him, without his intention, or in spite of his intention, he must be considered, at the time of his death, as domiciled in the state of New York.

If this view be correct, then it follows the judgment appealed from is right, and should be affirmed, with separate bill of costs to each of the respondents filing briefs on this appeal payable out of the estate. All concur.