STATE OF COLORADO, Appellant, *v.* KATE A. HARBECK, Individually and as Executrix, etc., of JOHN H. HARBECK, Deceased, and Others, Respondents.

First Department December 19, 1919.

**Domicile — place of domicile after leaving old and before acquiring new — personal property — legal situs — appeal — when failure to plead foreign statute cannot be raised on appeal — wills — foreign wills — legatee receiving property thereunder governed by law of testator's domicile — Colorado inheritance tax — validity as to resident of New York of assessment made on notice by mail — legatees accepting legacies under Colorado will assume obligation to pay inheritance tax of that State — jurisdiction — right of one State to sue in courts of another — comity — taxes — right to recover in action where special statutory remedy ineffective — action by State of Colorado to recover inheritance tax — provisions in will that legacies shall be free of inheritance tax as defense to action therefor.**

The domicile of a person continues until he acquires a domicile in another place.  And so a testator, who had acquired a residence and domicile in Colorado, was still domiciled in said State at the time of his death in New York, though at that time he was on his way to Paris with the avowed purpose and intention of acquiring a domicile and residence there.

The legal situs of personal property follows the domicile of the owner though the property is physically within another State.

Where a statute of another State is received in evidence without objection, the point that the statute was not pleaded cannot be raised on appeal.

The will of the testator disposing of personalty and some real property in the State of New Jersey was probated in this State as that of a resident of Colorado and in the proceedings to determine the transfer tax due this State it was found that the testator was a resident of Colorado and the tax was assessed as upon the estate of a non-resident, and afterwards the estate was closed and the defendants received their legacies.

*Held*, that the defendants, having invoked the aid of the State of Colorado and taken the testator's property through the operation of its laws, must comply with any conditions that State may impose in granting the benefit. ·

Accordingly in an action by the State of Colorado to recover an inheritance tax and to enforce a lien upon the distributed shares of the estate in the hands of the defendants, it is no defense that the defendants were not personally served within the State of Colorado with notice of the assess-

ment of the tax, where the Colorado statute merely requires that notice be given by mail.

The defendants having accepted the property bequeathed to them under the laws of Colorado assumed an implied obligation to pay the inheritance tax according to those laws, and an action by the State of Colorado to recover the same is based on that implied obligation.

A State may seek in the courts of another State the relief or redress that any other corporation may demand.

If a special remedy provided by statute for the collection of taxes is not effectual to compel payment in spite of the taxpayer's determination not to pay, resort may be had to an action against the taxpayer.

The fact that the State of Colorado could not enforce the payment of the inheritance tax in the manner prescribed by its Inheritance Tax Law does not prevent it from bringing an action in this State to recover from the defendants, on their implied obligation, the amount of the taxes due.

The defendants by their conduct in the proceedings for the probate of the will in this State assumed the statutory obligation imposed by the Colorado statutes and thereby made it their contractual obligation enforcible in the courts of this State.

Public policy does not prohibit the assumption of jurisdiction by the courts of this State in an action by the State of Colorado to recover an inheritance tax from residents of this State, and the principle of comity demands that our courts assume jurisdiction.

It is no defense to an action to enforce a lien for the inheritance tax upon the distributed shares of an estate in the hands of the defendants that the will provided that the legacies should be free from any inheritance tax, where the statute fixing the tax specifically provides that all legacies shall be subject to the tax until the same shall have been paid as therein directed.

APPEAL by the plaintiff, State of Colorado, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 13th day of March, 1919, dismissing the amended complaint upon the decision of the court after a trial at the New York Special Term.

The opinion of Special Term is reported in *State of Colorado* v. *Harbeck* (106 Misc. Rep. 319).

*Bertrand L. Pettigrew* of counsel [*George W. Thomas* with him on the brief], for the appellant.

*Theodore N. Ripsom,* for the respondent Kate A. Harbeck.

*Alfred S. Brown,* for the respondent William Henry Harbeck.

*William L. Greenfogel,* for the respondent Alfred S. Brown.

*James P. Niemann,* for the respondent Francis B. Clark.

*George L. Shearer* of counsel [*Harry K. Davenport* with him on the brief; *Stewart & Shearer,* attorneys], for the respondent United States Trust Company of New York.

PHILBIN, J.:

The action is brought to recover an inheritance tax upon the estate of John H. Harbeck, deceased, and to enforce a lien upon the distributed shares of the estate in the hands of the defendants.

The stipulated facts follow: John H. Harbeck died in the city of New York on November 8, 1910, leaving a last will and testament and four codicils thereto. The testator had acquired a residence and domicile in the city of Boulder, county of Boulder, Colo., in or about the year 1897. He left Boulder for the last time about a month prior to his death, which occurred at the Hotel Plaza, in the city of New York, where he and his wife, the defendant Kate A. Harbeck, were stopping while *en route* abroad. His fatal illness was contracted while securing steamship passage for Europe. It was his purpose to acquire a residence and domicile in Paris, and he had left Colorado with that intention.

On March 28, 1911, the will and codicils of the testator were admitted to probate by the Surrogate's Court of the county of New York. Letters testamentary were issued to the widow, Kate A. Harbeck, who was named in the will as executrix. The petition by her for probate and the accounting proceedings alleged that she was a resident of Boulder, Colo., and that the testator at the time of his death was likewise a resident of Boulder. In the proceedings had to determine the transfer tax due the State of New York it was found that the deceased was a resident of the State of Colorado. The tax was assessed as upon the estate of a non-resident, and paid to the State of New York upon that basis. On or about July 8, 1913, Kate A. Harbeck rendered an account of all her proceedings as such executrix to the Surrogate's Court of the county of New York, and thereupon such proceedings were had that on March 10, 1914, a decree

was made judicially settling and allowing said account as filed. The decree provided that upon making certain payments, as therein directed, the executrix be forever discharged from all further liability in respect to all matters embraced in the accounting. Payments were made as directed. All of the proceedings in relation to the accounting and the said payments occurred prior to any notice or demand by this plaintiff, or any other person, on account of the taxes claimed herein. The plaintiff was not a party to the accounting and no provision was made therein for payment of any tax to it. Plaintiff did not learn of decedent's death until after the accounting. The entire estate consisted of personalty except some real property in the State of New Jersey. No probate proceedings were ever instituted in the State of Colorado, and neither the jurisdiction nor aid of the County Court of Boulder, or any other tribunal of Colorado, was ever invoked by Kate A. Harbeck or by any of the defendants, or by any person on their behalf, with reference to the property or affairs of the estate of the decedent, or the settlement thereof or the payment of the legacies. After the judicial settlement of the account, at the instance of the State of Colorado and in or about February, 1916, an administrator with the will annexed of said John H. Harbeck was appointed and qualified as such in Colorado and has continued to act as such down to the present time. Such administration proceedings were had without notice to these defendants and they did not appear therein or become a party thereto by their own act or consent.

The Inheritance Tax Law of Colorado, in force at the time of the death of the testator in 1910, was a part of chapter 3 of the Session Laws of 1902 (as amd. by Laws of 1907, chap. 214, and Laws of 1909, chap. 193) of said State and entitled: " An Act in relation to public revenue, and repealing all previous acts or parts of acts in conflict therewith." Pursuant to said Inheritance Tax Law, as further amended and revised in 1913 (Laws of 1913, chap. 136), and on or about February 28, 1916, an appraisal was had in Colorado at the fair market value of property which belonged to the decedent at the time of his death. Thereafter and on March 4, 1916, in the County Court of Boulder county, which is a court of record,

given jurisdiction under the Inheritance Tax Law of proceedings relating to estates of residents of the district within which the city of Boulder was situated, an order was made fixing the nature and value of the claimed taxable interests of the defendants as beneficiaries under the will and codicils. The tax was assessed, in accordance with the Inheritance Tax Law, at various amounts specified as to each defendant except the United States Trust Company. The aggregate sum so taxed is upwards of $61,000.

None of the defendants was personally served within the State of Colorado with any process or notice issuing out of any court of that State, or issued by any tax appraiser thereof, and none of the defendants was ever served by publication or substituted service with any process or notice, except that defendants did receive certain notices or papers through the mail. The first of these papers is dated February 11, 1916, and gives notice that the tax appraiser will on February 28, 1916, appraise at its fair market value all the property of the decedent. The second notice is signed by the clerk of the County Court and dated March 6, 1916. It gives notice that, by an order of said court entered on that day, the inheritance tax had been assessed as above mentioned. This second notice also states that if any person interested is dissatisfied with the assessment made or tax fixed he may appeal therefrom to the District Court within sixty days upon giving good and sufficient security, to the satisfaction of the county judge, to pay all costs and the taxes as fixed by the court. It further states that any person so dissatisfied may object thereto to the County Court within sixty days after the making of the assessment order and may, within ten days after the entry of judgment upon such objections, appeal therefrom to the District Court upon giving a bond to pay all costs and whatever taxes shall be fixed by the District Court on appeal. None of the property of the testator was, at the time of his death or subsequently, physically in Colorado or the custody or control of any court or official of that State.

After the death of decedent and prior to the institution of the Colorado proceedings and this action, Kate A. Harbeck acquired a residence and domicile within this State. The defendant United States Trust Company accepted a trust set

forth in the will and later referred to herein. The legacies bequeathed to defendants Brown, Clark and James were bequeathed to them free from any tax. After the payment of all legacies, debts and expenses, the residuary estate amounted to more than sufficient to pay any and all inheritance taxes thereon. The legacies were paid to said legatees. The legacy to the United States Trust Company was also paid. A detailed schedule of the personal property of the decedent was included in the admitted facts and shows the total value to be $3,041,020.87.

The complaint, after setting forth substantially the above facts, alleges that pursuant to said Inheritance Tax Law, the tax became due and payable at the death of the decedent, and, with the interest thereon from said date, became a lien on the personal estate of said decedent at that time and remains a lien thereon no matter into whose hands the same may come. It is further alleged upon information and belief that each of the defendants had due notice of the entry of said order of assessment and the amount of the tax; that the defendants received and now retain the property of said estate, which was impressed with said lien in favor of the plaintiff and that the defendants are personally liable for the tax. It is finally alleged that payment with interest from November 8, 1910, has been demanded, but not paid. Judgment is demanded against the executrix for the total amount of the tax and against each defendant for the amount of the tax assessed against him or her, including the United States Trust Company which was made a party because of the trust created in the will for the benefit of William H. Harbeck for life, remainder to the residuary estate.

The defendants contend that this action cannot be maintained because: *First,* all proceedings upon which this action is based were had in the State of Colorado, without personal service of process upon the defendants and without appearance by them, and are a nullity in so far as they and this action are concerned; *second,* there is no authorization whatever under the laws of Colorado or New York for this action; *third,* the alleged claim or cause of action is of such character that our courts cannot entertain it.

The Inheritance Tax Law of Colorado (Laws of 1913, chap.

136), under which the appraisal was had, does not require that personal service shall be made of the notice to be given persons interested as to the fixing of the tax.   Section 13, among other things, provides that it shall be the duty of the inheritance tax appraiser, whenever occasion may require, to appraise the estate of any deceased person upon which letters of administration or letters testamentary have been issued; to give notice forthwith by mail to all persons known to have or claim an interest in said property and to such persons as the county judge may by order direct of the time and place at which he will appraise such property, and at such time and place to appraise the same at a fair market value.   He may issue subpœnas for and compel the attendance of witnesses. The appraiser is required to make a report to the County Court and to the Attorney-General showing the fair market value of all the estate at the time of decedent's death, and the claims against the estate; also the names, relationship and residences of all beneficiaries, as well as other details.   The section further provides that the County Court shall forthwith enter an order fixing the cash value of the estate and of the interest passing to each person under the will; that any person dissatisfied with the assessment made or tax fixed may object or appeal in manner substantially as provided in the second notice received through the mail by the defendants as above mentioned.   The letters of administration with the will annexed issued in February, 1916, referred to above, were taken out on the application of the Attorney-General pursuant to a further provision in said section 13, to the effect that where no letters testamentary or of administration have been issued upon an estate, and the tax has not been paid to the satisfaction of the Attorney-General within sixty days from the date of death the County Court may grant letters of administration or of administration with the will annexed to any person upon the application of the Attorney-General.   It was also set forth that nothing in such provision should be construed to compel the Attorney-General to apply for such letters or to prevent the enforcement of the collection of any inheritance tax in any other manner provided for by said act or by law.

The domicile of the testator was in Boulder, Colo., at the

time of his death. (*United States Trust Company* v. *Hart*, 150 App. Div. 413; affd., 208 N. Y. 617.) The legal situs of his personal property followed the domicile although such property was physically within this State. (*Blackstone* v. *Miller*, 188 U. S. 189, 204; *Matter of James*, 144 N. Y. 6, 10.) At the time the tax proceedings were instituted in Colorado, none of the defendants was domiciled or resided in that State. Kate A. Harbeck, who at the time of the probate of the will was domiciled in Boulder, Colo., subsequently acquired a domicile here. She was the only one of the defendants who at any time resided in Colorado. The statute law of Colorado was received in evidence without objection and the point that the foreign statute was not pleaded, now made by one of the defendants, is untenable. There is no question raised on this appeal as to the regularity of the proceedings fixing the tax, except the manner of serving defendants with notice thereof. I am of the opinion, under the peculiar circumstances of this case, that personal service within the State of Colorado was not essential to the valid assessment of the tax and the fixing of the liability therefor upon the defendants. The statute merely required the notice to be given by mail and the defendants, having proceeded under the law of Colorado in taking the property bequeathed to them, were bound by all its provisions. The New York probate, accounting and tax proceedings were all instituted or taken part in on the representation by defendants that decedent was a resident of Colorado. The property was, therefore, dealt with under its laws. (Decedent Estate Law, § 47.) The defendants, having invoked the aid of the State of Colorado and taken the decedent's property through the operation of its laws, must comply with any conditions that State may impose in granting the benefit. In *United States* v. *Perkins* (163 U. S. 625, 628) the court says: " * * * we know of no legal principle to prevent the Legislature from taking away or limiting the right of testamentary disposition or imposing such conditions upon its exercise as it may deem conducive to public good.

" In this view, the so-called inheritance tax of the State of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall con-

tribute a certain percentage to the public use; * * *. Certainly, if it be true that the right of testamentary disposition is purely statutory, the State has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee."

The court then quotes Chief Justice TANEY in *Mager* v. *Grima* (8 How. [U. S.] 490, 493) as follows: " * * * The law in question is nothing more than an exercise of the power which every State and sovereignty possesses, of regulating the manner and term upon which property real or personal within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it. * * * If a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy."

A good illustration of the principle which enables a State to impose conditions upon those seeking the benefit of its laws is found in the statutes granting privileges to foreign corporations. It is customary and lawful to provide for other than personal service of process to fix a liability upon such corporations. (*Flexner* v. *Farson*, 248 U. S. 289; *Sukosky* v. *Philadelphia & Reading Coal & Iron Co.*, 189 App. Div. 689.)

The defendants by absenting themselves from the State of Colorado made it impossible to proceed under sections 17, 18 and 19 of the Inheritance Tax Law of 1913. These sections provided for a review of the appraisal proceedings and the collection of the tax upon the service of a summons as in an action *in rem.* Nothing was required to be done under those sections to finally determine the tax and make it a binding obligation and lien. They will later be referred to in discussing defendants' claim that the plaintiff's only remedy for non-payment of the tax was contained therein and that they were exclusive in that regard.

In support of their contention that personal service of the notice in the appraisal proceedings was necessary to confer jurisdiction, the respondents have cited many cases that

apparently lend support to the claim. In none, however, do the peculiar circumstances existing here obtain. None of the persons proceeded against under the tax laws had taken the benefit of the laws relating to decedents' estates of the foreign State. Some of the cases referred to taxes other than inheritance taxes and, therefore, are not controlling here. The plaintiff is seeking to enforce the implied obligation entered into when defendants accepted the property of the decedent under the laws of Colorado. We think that it has been established in this action that such obligation exists. There is nothing in *Pennoyer* v. *Neff* (95 U. S. 714) holding otherwise.

It now becomes necessary to take up the question as to the plaintiff's right to enforce this obligation in this State. It is contended by defendants that sections 17, 18 and 19 of the Colorado Inheritance Tax Law of 1913 contain the sole remedy open to the plaintiff for the collection of the taxes. We have seen that because of the absence from Colorado of the defendants and of any property therein belonging to the decedent, no proceedings could be had under those sections. The defendants, although they admit having received the notice by mail provided for in the Colorado statute, have not voluntarily submitted to the jurisdiction of that State or permitted personal service to be made upon them therein.

Section 17, in brief, gives the County Court jurisdiction over the property of a decedent and taxes thereon and provides that the County Court first acquiring jurisdiction shall retain the same " to the exclusion of every other " (County Court). Section 18 provides that where the tax has not been paid the County Court shall issue a summons requiring the person interested in the property to appear on a day certain, not more than three months after the date of the summons, to show cause why the tax should not be paid. The summons may be served in every respect as provided for a summons in a civil action *in rem* unless otherwise provided in the act. Section 19 states that after the refusal or neglect to pay a tax within one year from the accrual thereof, and where no bond has been given, it shall be the duty of the Attorney-General to file a petition under section 18 and press it to a final conclusion. The Attorney-General is authorized to

appear in behalf of the State in any and all inheritance tax matters before any court of record.   Because of inability to invoke the operation of the foregoing sections, the plaintiff should not be deprived of all remedy and compelled to abandon every effort to keep the defendants to the obligation they assumed as above stated.   There is nothing to prevent a State, a political corporation, from seeking in the courts the relief or redress that any other corporation may demand. (*Delafield* v. *State of Illinois*, 2 Hill, 159.)   And it is to be noted that section 13, in providing that the Attorney-General may apply to have a person take out letters of administration with the will annexed, states as already indicated that such provision shall not prevent the enforcement of the collection of any tax in any other manner " as may be provided in this act or *by law*."   And section 19 says that the Attorney-General shall be authorized to appear in behalf of the State " in any and all inheritance tax matters before *any* court of record." In *Pinnacle Co.* v. *People* (58 Colo. 86, 90) it was held that if a special remedy provided by statute for the collection of taxes is not effectual to compel payment in spite of the taxpayer's determination not to pay, resort may be had to an action against the taxpayer.

The remedy sought by the plaintiff is not limited to its courts and adequate enforcement can be had in ours.   (*Howarth* v. *Angle*, 162 N. Y. 179; *Shipman* v. *Treadwell*, 200 id. 472.)   A different situation was presented in *Marshall* v. *Sherman* (148 N. Y. 9).   There the action was brought by a creditor of a Kansas bank to enforce a statutory liability of a stockholder under a statute of that State.   It was held that there was no reason why the plaintiff should be permitted to enforce the liability against a citizen of this State in a form of action different from that which a creditor of a domestic corporation may prosecute against a domestic stockholder. In the *Howarth Case* (*supra*), approved in *Knickerbocker Trust Company* v. *Iselin* (185 N. Y. 54, 59), it was held that the enforcement of a statutory liability against a resident stockholder for debts of an insolvent foreign corporation does not rest upon the theory that the laws of the foreign State are in force in this State, but upon the *contractual* obligation the shareholder assumes to meet the liability affixed by the statute

First Department, December, 1919.          [Vol. 189.

to the ownership of the stock. The defendants in this case by their conduct assumed the statutory obligation and thereby made it their contractual obligation.

Public policy does not prohibit the assumption of juris-. diction by this court and the principle of comity demands it. (*Loucks* v. *Standard Oil Company*, 224 N. Y. 99.) The Inheritance Tax Law of Colorado has precisely the same design as a similar law in this State, and may indeed be said to be identical in its general provisions and scope. It was apparently to avoid the full force of the provisions of our own law that the defendants placed the decedent in the position of a non-resident of this State. As was said in the *Loucks* case: "A foreign statute is not law in this State, but it gives rise to an obligation, which, if transitory, 'follows the person and may be enforced wherever the person may be found.' * * * 'No law can exist as such except the law of the land; but * * * it is a principle of every civilized law that vested rights shall be protected.' * * * The plaintiff owns something, and we help him to get it. * * * We do this unless some sound reason of public policy makes it unwise for us to lend our aid."

The claim of certain defendants that they are exempt from payment of an inheritance tax because of provisions to that effect in the codicils, is a matter that the defendants must elsewhere adjust among themselves. The Colorado statute of 1902 (Laws of 1902, chap. 3, § 21, as amd. by Laws of 1909, chap. 193, § 1) provides that legacies shall be subject to the tax and that all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as therein directed. It follows, therefore, that all the defendants, including the United States Trust Company, are liable to the extent that the estate of the testator has come into their possession.

The judgment appealed from should be reversed, with costs, and judgment directed for the plaintiff as prayed for in the complaint, with costs. The conclusions of law numbered "2" to "10" inclusive should be reversed. Plaintiff's proposed findings of fact numbered "III," "XI" and "XII" should be found; also such conclusions of law as are in accord with the views expressed in this opinion. Submit, on notice,

an order of reversal containing findings of fact and conclusions of law.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concurred.

Judgment reversed, with costs, and judgment directed for plaintiff as prayed for in the complaint, with costs. Order to be settled on notice.