In the Matter of the Estate of Nelda H. Robinson, Deceased.[*]

Surrogate's Court, New York County, July 6, 1944.

---

[*] See, also, *Matter of Donner*, 184 Misc. 265.— [Rep.

*Allen Evarts Foster* for Nelda R. Audibert and another, executors, petitioners.

*Hamilton McInnes* for State Tax Commission, respondent.

FOLEY, S. The executors appeal from the *pro forma* order of April 11, 1944, fixing the estate tax on the report of the appraiser of the State Tax Commission. The ground of appeal is that the testatrix died domiciled in France and that the appraiser erroneously found that she was a resident of New York.

The appeal is denied. The decedent died on January 27, 1942, at the Hotel Plaza in New York City. She was born in Philadelphia, Pennsylvania, in 1860. In 1882, she was married to William Moore Robinson, a native of Wilmington, Delaware. After their marriage, the couple lived in Philadelphia for a few years and then, in 1885, moved to New York. A daughter was born to them here in 1886. The decedent and her husband lived here until 1890 when they went to France. That they had acquired a domicile of choice in New York and that such was their domicile when they left for France is not challenged. Any other claim would be futile (*Matter of James,* 221 N. Y. 242, 255.)

From 1890 to 1919, the decedent lived with her husband in rented apartments in Paris, France. The daughter married in 1914 and established her own home.

About 1919, the decedent and her husband changed their mode of living. They gave up an apartment which they had leased for some years, put their furniture in storage and moved to a hotel From 1919 until the latter part of 1937, they spent their winters in Lucerne, Switzerland, and the summer months in Savoy, France.

During the period from 1890 to 1933, the decedent and her husband made frequent visits to New York, returning here at least once every two years. Beginning with 1933 and until 1937, they came here every year to visit their daughter who, with her husband and children, had become permanent residents of this city. On their earlier sojourns in New York they stayed at the home of Mr. Robinson's mother in this city. On their later sojourns, and starting about 1930, they always stayed at the Hotel Plaza. Mr. Robinson died at that hotel on January 24, 1938.

In connection with these trips to and from Europe, the decedent executed numerous applications for passports and passport renewals. In one of these documents, executed in 1914, Mrs. Robinson stated under oath that she was domiciled in the United States, and that her permanent residence was " at New York ". She further stated that she was about to go abroad temporarily and that she intended to return to the United States within two years. It was established by the testimony of her daughter, who appeared as a witness for the executors, that Mrs. Robinson did return to New York every two years until 1933 and that, thereafter and until 1937, she returned each year.

In at least nine other such applications, executed at two-year intervals from 1919 to 1936, the decedent repeated these declarations of New York domicile. She gave " travel and pleasure " as the reason for these trips abroad and stated that she and her husband intended to visit the British Isles, France, Spain, Switzerland, Italy, Germany and other countries " if possible ". This picture of the decedent and her husband as tourists of Europe is confirmed by the testimony of the daughter. She stated that her parents sold their furniture " many years ago " and that, at least after 1919, they had no established home anywhere in Europe " because they travelled ".

With this background of facts we come to the important period of the four years following the death of the decedent's husband in January, 1938, and immediately preceding her death in January, 1942. After Mr. Robinson's death, an order was entered in this court on July 15, 1938, exempting his estate from tax upon the ground that he died a resident of Lucerne, Switzerland. The petition for exemption was unopposed by the State Tax Commission and the order was entered in the regular course of procedure. The executors of Mrs. Robinson's estate now contend that as the domicile of a wife follows that of her husband, it must be presumed that on January 24, 1938, the date of her husband's death, Mrs. Robinson was a nonresident of New York.

They further contend that the burden of establishing a change of domicile by the decedent subsequent to that date rests upon the Tax Commission.

Even if it be assumed that the order exempting the husband's estate is conclusive as to the then domicile of the wife, the burden placed upon the Tax Commission to establish a change of domicile to New York is amply sustained by the acts and declarations of the decedent from the date of her husband's death to that of her own. The nature and weight of that evidence are hereinafter discussed by the Surrogate.

The decedent, after her husband's death, remained in residence at the Hotel Plaza until May 19, 1938, when she sailed for Europe. Again she executed an application for a passport and again she stated, under the solemnity of an oath, that she was '' domiciled in the United States, my permanent residence being at the Hotel Plaza, New York City, N. Y.'' As her reason for going abroad, she said that she intended to visit Switzerland '' for pleasure ''. Upon her return to New York a few months later, Mrs. Robinson resumed her residence at the Hotel Plaza.

The decedent's last trip to Europe was made in 1939. She left here in May of that year. She spent part of the time in Switzerland and part in France. She returned to New York in October, just after the outbreak of the present World War. Upon her arrival she executed a baggage declaration in which she stated that she resided at the Hotel Plaza, New York City.

It thus appears that the decedent during these disputed years continued the declarations of New York domicile which she had consistently made over a long period of time. These declarations are of persuasive weight (*In Re Walter's Estate*, 48 N. Y. S 2d 952; *United States Trust Co.*, v. *Hart*, 150 App. Div. 413, mod. 208 N. Y. 617; *Matter of Leidenger*, 173 Misc. 808; *In Re Kronig's Estate*, 36 N. Y. S. 2d 909; *Matter of Lange*, N. Y. L. J., Sept. 3, 1930, p. 2438, col. 5). Apparently recognizing the force of these decisions, the executors attempt to escape their application upon the theory that Mrs. Robinson was an '' elderly lady '' who did not understand the import of her sworn declarations of New York domicile. This inference is rendered inadmissible upon the executors' own proof. (*Matter of Stone*, 272 N. Y. 121.) In the course of the tax proceeding a question arose as to the nature of certain substantial gifts made by the decedent about one year before her death. In support of their contention that the gifts were not made in contemplation of death, the executors submitted the affidavits of the decedent's son-in-law, her per-

sonal physician, a physician who attended her in May, 1941, and a third doctor who treated her during the summer of 1941. The statements of all were in agreement that Mrs. Robinson was a woman of high intelligence, " mentally alert ", accustomed to traveling alone and entirely capable of managing her own affairs without assistance from anyone.

But, apart from this, there is abundant evidence in the record that the decedent was not filling out in her passport applications a mere " printed form " in which she declared herself to be domiciled here. In the execution of other documents of the utmost importance to her she also gave New York as her place of residence. Thus she executed powers of attorney to her bankers in which she described herself as " of New York ". She registered at the Hotel Plaza as from New York City. Her will is drawn in accordance with New York law and in it she gave most of her estate to her daughter, a resident of New York.

These declarations of domicile coincide with the actual facts. After her husband's death in 1938, the decedent's home was the Hotel Plaza. She left it only to spend the summers of 1938 and 1939 in Europe and the summer months of 1940 and 1941 with her daughter and son-in-law at resorts in New England. Visits of short duration were made with other relatives but never with the intention of breaking the continuity of her legal residence at the hotel. That this correctly represents the factual situation is borne out by the significant admission of the daughter, the residuary legatee who bears the estate tax. On the decedent's death certificate, there appears a statement that Mrs. Robinson's " usual residence " was the Hotel Plaza and that she had resided there " 4 years " immediately prior to her death. The information thus recorded was given by the daughter and the death certificate was signed by her.

Upon this evidence and its confirmation on every essential point by the executors' own witnesses, no other finding is possible than that the decedent died a resident of and domiciled in New York.

The question of the burden of proof, in view of the overwhelming nature of the evidence, is not important. Even assuming, as the executors contend, that this burden rested upon the State Tax Commission, it has been more than adequately borne here. It was shown that all of the decedent's ties of home, of family, of country and even of property were here. It was shown that these ties never were relinquished and that they grew stronger in the later years of her life, particularly in the four

years immediately preceding her death. The evidence thus presented meets the highest requirements of proof (*United States Trust Co., v. Hart,* 150 App. Div. 413, *supra; Matter of Benjamin,* 176 Misc. 518, affd. 263 App. Div. 981, affd. 289 N. Y. 554; *Matter of Lydig,* 191 App. Div. 117 ; *Matter of Martin,* 173 App. Div. 1; *Matter of Blumenthal,* 101 Misc. 83, 88, affd. 186 App. Div. 944; *In Re Kronig's Estate,* 36 N. Y. S. 2d 909, *supra; In Re Walter's Estate,* 48 N. Y. S. 2d 952, *supra*).

Against this conclusion, it is urged that Mrs. Robinson could not have intended to make her permanent home in New York because " she took particular care to remain outside the State of New York for at least five months in every year so that she would not be liable for the New York income tax ". A like argument was made in *Texas* v. *Florida* (306 U. S. 398). In rejecting it the court said (p. 426) : " He spent more time there than at any other place, evidently curtailing his stays only to avoid the possible danger of being subjected to Massachusetts taxation. His conception of legal residence or domicile as a mental state whereby he could obtain certain political advantages and freedom from taxation does not weigh against this conclusion. He could not elect to make his home in one place in point of interest and attachment and for the general purposes of life, and in another, where he in fact had no residence, for the purpose of taxation."

As I pointed out in *Matter of Daly* (178 Misc. 943, 948), the provisions of the Tax Law, upon which the executors here rely, have no application to a determination of domicile in an estate tax proceeding. They are confined exclusively to liability for an income tax. (Tax Law, § 350, subd. 7; and see *Matter of Trowbridge,* 266 N. Y. 283, 292; *Matter of Johnson,* 259 App. Div. 290, affd. 284 N. Y. 733; *Matter of Benjamin, supra.*)

Only one other observation need be made. The order of exemption in the estate of the decedent's husband was entered upon a petition, signed by the son-in-law of the couple as coexecutor, in which it was alleged that Mr. Robinson died domiciled in Switzerland. In the present proceedings the executors, of whom the son-in-law is one, allege that this was a mistake and that Mr. Robinson, in fact, died domiciled in France.

This change of position weakens the contentions of the executors. But it is of little importance here because of the overwhelming array of evidence which so firmly established a return to a domicile in New York in the four years between the date of the husband's death and the date of the death of the decedent.

The facts in the present appeal are typical of many. similar

cases which have arisen in the past thirty years. At the outbreak of the first World War and in the beginning of the present World War many residents of our State, temporarily expatriated in Europe, returned as quickly as possible to their real places of legal residence here. Great Britain and the continent may have had attractions for them in peace time, but in the face of impending or actual war, the homing instinct carried them back to their true domicile.

The conclusion of the appraiser that the decedent's domicile at the time of her death was in New York is correct.

The appeal of the executors is denied.

Submit order on notice accordingly.