In the Matter of the Estate of EMMA E. DONNER, Deceased.*

Surrogate's Court, New York County, December 21, 1944.

---

* See, also, *Matter of Robinson*, 184 Misc. 330.— [REP.

*Thomas B. Gilchrist* and *Catherine Noyes Lee* for Samuel T. Warner, executor, petitioner.

*Mortimer Hays* and *Benjamin Algase* for Jacques F. B. Nason, respondent.

*Emanuel Redfield* for Albert C. Santy and another, respondents.

*Hamilton McInnes* for State Tax Commission.

*Hayes, St. John, Abramson & Schulman* for Alex Pruzan and another, respondents.

*Victor D. Werner* for Grace M. Shotwell, respondent.

FOLEY, S. In this probate proceeding the will was contested and was admitted by decree. (N. Y. L. J., July 13, 1944, p. 80, col. 5; N. Y. L. J., July 20, 1944, p. 125, col. 6.)

The decree reserved for further determination by supplemental decree the question of the residence of the testatrix at the time of her death. The specific issue was whether the testatrix changed her prior domicile in France to a domicile in New York.

At the trial of that issue, oral and documentary evidence was submitted by the respective parties.

The executor and the beneficiaries under the will contended that Mrs. Donner died a legal resident of New York. An alleged adopted son claimed that she retained her domicile in France.

The Surrogate finds upon the evidence that Mrs. Donner at the time of her death was a resident of the State and county of New York. The burden cast upon the executor and those associated with him to establish a change of domicile has been fully met.

Mrs. Donner was born in the State of Massachusetts. She afterwards resided in New York City. She was married here in 1895 to a citizen of Great Britain. Thereby she lost her American citizenship. It is an undisputed fact that she ultimately acquired a domicile in France. She and her husband had a pretentious house in Paris. Her husband died in 1938. The Paris house was retained in ownership by her until the time of her death. Shortly after the outbreak of the present World War she closed her house in Paris and went to Nice. She left there in June of 1941 and came to New York. She arrived here on August 9, 1941. She rented an apartment in the Hotel Plaza where she continued to reside until she passed away.

There is evidence of vague and indefinite oral declarations by her that she intended to return to France after the war. There are contrary oral declarations that such a visit was intended to be temporary only for the purpose of selling her house in Paris and reclaiming the furnishing and personal effects stored in it. There are stronger oral declarations to the effect that she never intended to return to France.

These oral statements made by her are of little weight in the solution of the issue in the face of the overwhelming documentary evidence which so clearly reveals an intention to abandon France as a domicile and to establish a permanent one in New York. The principal and most effective action was taken by her shortly after her return to this city by a formal application to the United States District Court, Southern District of New York, for the restoration of her status as an American citizen and for a determination of repatriation. In her application she stated that her place of residence was at the Hotel Plaza in this city. She took and filed the necessary oath of allegiance to the United States and the renunciation of her British citizenship. That application for the restoration of her status was granted by order made on June 29, 1942. In a prior document she declared under oath her intention to remain in the United States as a permanent resident.

In three wills executed between 1941 and November 19, 1943 (which is the will admitted to probate), she declared that she was a resident of the city, county and State of New York.

She filed an income tax return with the State Tax Commission and paid a substantial tax as a resident of the State of New York. In it she gave her residence as the Hotel Plaza in this county.

She also filed a Federal income tax return and paid the tax in a substantial sum as a resident of the United States.

She had securities which were kept in a custodian account for many years in a bank in New Jersey. At the time of her death she had large bank deposits in a New York bank and in a New Jersey bank in excess of $200,000. The total assets in the United States approximated $350,000. Her holdings of property in France were inconsequential when compared with the property in the United States.

This overwhelming array of evidence firmly establishes an intention to change and an actual change of domicile to New York. (*United States Trust Co.* v. *Hart,* 150 App. Div. 413, affd. on this point, 208 N. Y. 617; *Matter of Blumenthal,* 101 Misc. 83, affd. 186 App. Div. 944; *Matter of Kronig,* N. Y. L. J., June 19, 1942, p. 2599, col. 2; *Matter of Walter,* N. Y. L. J., April 12, 1944, p. 1418, col. 3; *Matter of Robinson,* 184 Misc. 330.)

As I pointed out in *Matter of Robinson* (*supra*) many similar cases have arisen in the past thirty years. At the outbreak of the first World War and during the present war many persons living in Europe returned to America to re-establish their legal residence here. Europe may have had attractions for them in peace time, but in the face of impending or actual war, the homing instinct carried them back to their true domicile.

Because of my determination of domicile, the question of the status of the alleged adopted son, Jacques F. Baar Nason, has become academic. The adoption is claimed to have been made by the testatrix in France prior to her leaving there in 1941. The alleged son is not named as a legatee in the probated will dated November 19, 1943. No question is involved as to the effect of an adoption made subsequent to a will (Decedent Estate Law, § 26.) He has no interest in any of the domiciliary assets of the testatrix' estate in the United States or in Great Britain. If he has been legally adopted and may be entitled under the French law to an interest in the real property owned by the testatrix there, such right must be established in the French courts.

Submit supplemental decree on notice accordingly.