Settle order on notice.

---

(82 Misc. Rep. 671.)

### PEOPLE ex rel. DRISCOLL v. BENDER.

(Supreme Court, Trial Term, New York County. November 1, 1913.)

1. ELECTIONS (§ 72*)—REGISTRATION—"RESIDENCE"—"DOMICILE."

Election Law (Consol. Laws 1909, c. 17) § 162, provides that a voter is not competent to register unless he has resided in the district for at least 30 days prior to the day of the election, and Penal Law (Consol. Laws 1909, c. 40) § 752, subds. 2 and 4, declare that any person who registers or attempts to register as an elector knowing he will not be qualified to vote in the particular district at the election or knowingly gives a false residence within the election district, is guilty of a felony. *Held*, that the term "residence" as so used is synonymous with "domicile," which imports not only intention to reside in a fixed place, but also personal presence in that place, coupled with conduct indicative of such intention; a fixed and permanent home, a voting residence, as distinguished from the place where one actually and habitually dwells, not being recognized by law.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 67, 68, 70; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 7, pp. 6151–6161; vol. 8, p. 7788; vol. 3, pp. 2168–2179; vol. 8, pp. 7641, 7642.]

2. ELECTIONS (§ 329*)—REGISTRATION—RESIDENCE—EVIDENCE.

Evidence *held* to justify a finding that accused registered from a place of abode and in an election district in which he did not reside, in violation of Penal Law (Consol. Laws 1909, c. 40) § 752, making such act a felony.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 364–366; Dec. Dig. § 329.*]

Prosecution by the People of the State of New York, on the relation of Clement J. Driscoll, against George Bender for illegal registration. On motion to dismiss. Denied.

Herbert R. Limburg, of New York City, for complainant.
John G. Saxe, of New York City, for defendant.

GAVEGAN, J. The information laid before me charges the defendant with the violation of subdivisions 2 and 4 of section 752 of the

---

Penal Law (Consol. Laws 1909, c. 40).  So much of that section as applies to this case provides as follows:

"Any person who:  *  *  *  Registers or attempts to register as an elector knowing that he will not be a qualified voter in the district at the election for which such registration is made; or,  *  *  *  knowingly gives a false residence within the election district when registering as an elector;  *  *  * is guilty of a felony punishable by imprisonment in a state prison for not more than five years."

The question presented for determination is whether the evidence presented to me in the depositions submitted establish that this section of the Penal Law has been violated by this defendant.

The defendant registered on October 17, 1913, in the Eighth election district, in the Second assembly district of the borough of Manhattan.  In registering he stated his residence to be 103 Cherry street, and that he "occupied" a room on the second floor of that building. He also stated that he resided with a householder of the name of Manning, and that he had resided in said election district "for nine months," and that when he last voted he "lived at" No. 370 Water street.

Under the section of the Penal Law quoted above, it becomes necessary to inquire:  First, whether the defendant registered in the Eighth election district of the Second assembly district knowing that he was not a qualified voter in that district; or, second, whether the defendant knowingly gave a false residence when registering.

In order to be a qualified voter in the said Eighth election district and competent to register therein, the defendant must have resided in said district for at least 30 days prior to that time.  Section 162 of the Election Law (Consol. Laws 1909, c. 17).

The evidence now before me shows beyond question that this defendant resided at the time of registration at 36 Morningside Avenue East.  Thus the evidence discloses that the defendant lived at that address with his mother and brother.  While living there he has been seen to go to that address on leaving his office, and in the early morning of the next day he has been seen leaving those premises.  Contracts were made by the defendant with the New York Telephone Company and have been offered in evidence, and those contracts show that the defendant gave to the New York Telephone Company the address 36 Morningside East as his residence and caused his name to be inserted in the telephone directory as to that address.  Formerly the defendant lived at 366 West 116th street.  He then moved to 36 Morningside Avenue East.  In a letter to the telephone company, signed by him and dated April 15, 1912, the defendant said:

"Some time around the 19th of this month I intend to move from my residence, No. 366 West 116th street, to 36 Morningside East.  Will you kindly arrange to have telephone number 6384-j Morningside, removed from my present address on 116th street and replaced at 36 Morningside Avenue East. *  *  *  On your new books kindly list this up under my name."

On June 12, 1912, the defendant wrote the New York Telephone Company as follows:

"In getting out the next issue of the telephone book I would kindly ask you to put my residence address directly under my business address."

During the time the defendant lived at 36 Morningside East, all of the bills of the telephone company were addressed to the defendant at that address, and presumably these bills were paid by him.

These facts, in the absence of contradiction, demonstrate that the defendant lives at 36 Morningside East with his mother and brother, and that he has lived at that place from about April 19, 1912. This address is his permanent, fixed place of abode or home. There is no proof before me tending to show that the defendant ever lived at the address from which he registered. These facts compel the inference that the defendant registered in the Eighth election district of the Second assembly district, knowing that he was not a qualified voter therein, and that the defendant knowingly gave a false residence in registering.

[1] I attach little weight to the contention that the fact that the defendant lived at 36 Morningside East does not tend to show that he did not have his legal residence at No. 103 Cherry street. Generally speaking, the term "residence" as used in the Election Law is synonymous with the term "domicile." It imports not only an intention to reside at a fixed place, but also personal presence in that place, coupled with conduct indicative of such an intention. It is the fixed and permanent home of the elector from which the Election Law contemplates that the elector shall register and vote. This proposition I deem to be well sustained by authority. State Constitution, art. 11, § 1; Election Law, § 162; People v. Platt, 117 N. Y. 159, 22 N. E. 937; Matter of Collins, 64 How. Prac. 63; People v. Acritelli, 57 Misc. Rep. 574, 110 N. Y. Supp. 430; Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950.

A "voting residence," as distinguished from the place where one actually and habitually dwells, is not recognized by the law. Upon reflection is must be apparent that such is the meaning of the term "residence," as that term is used in section 162 of the Election Law.

[2] Suppose an elector owns or leases a dozen pieces of property in as many assembly districts in the county. Can it be contended that he may at each election determine in which assembly district he will register and vote? Is it possible that an elector so situated shall be guided in determining where he shall vote, not by the place of his permanent home, but by his desire to aid the political fortunes of his friends who are candidates for office in another district? If this be so, then the idea, fundamental in our system of government, that legislative candidates shall only be selected by the residents of the particular district or locality which is to be represented in the Legislature, is completely nullified. If such a thing as the counsel for the defendant contends is possible, then the lawful electors of a given assembly district might have their lawful votes canceled and rendered ineffective, by an invading army of persons who have no permanent home or place of abode in the district, coming into that district on registration day and election day for no other purpose than to lend their votes to support a candidate who is the choice only of a minority of the lawful electors of that district. If such a thing could be done, there would be an end of representative government. If, as I am informed in this case, there are many persons who have registered in the same manner

as this defendant is charged with registering, then a grave responsibility and duty is imposed upon those charged with the enforcement of the law to see to it that such illegal voters shall not be permitted to nullify the votes of honest men.

If such electors may vote in districts other than those in which they reside, the political control of the next assembly of the state might be entirely different from what it would be if only qualified electors of each district are permitted to vote.

For the reasons given, the motion to dismiss this proceeding is denied.