## In re MARTIN'S ESTATE.

## COMPTROLLER OF CITY OF NEW YORK v. METROPOLITAN TRUST CO.

(Supreme Court, Appellate Division, First Department. May 5, 1916.)

**1. DOMICILE ⬅2—"RESIDENCE"—TRANSFER TAX.**

While in many instances there is a difference between the legal intendment of the terms "residence" and "domicile," the theory in the matter of succession and transfer taxes renders the terms synonymous, since, in the case of succession, the intestate's personalty is distributed according to the statute of distributions in the state of the domicile, which is entitled to impose a duty on the privilege, irrespective of the "residence," using the term in its loose sense of "temporary lodging," and the same principle governs transfer by will.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 2; Dec. Dig. ⬅2.

For other definitions, see Words and Phrases, First and Second Series, Domicile; Residence.]

**2. DOMICILE ⬅4(1)—PARTIAL FOREIGN RESIDENCE—EFFECT.**

A party, who lived in New York in the winter, with the exception of an occasional trip to Palm Beach, occupying a suite of rooms while in the city, and always having the same rooms, where he kept a few belongings, though he only paid for them during actual occupancy, and who went abroad during the summer, stopping in London hotels, and in Paris living in an apartment furnished and maintained by himself and a friend, was domiciled in New York.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–8, 10–23; Dec. Dig. ⬅4(1).]

**3. DOMICILE ⬅8—CHANGE—BURDEN OF PROOF.**

In proceedings to collect a transfer tax, where it is shown that decedent's domicile, up to a certain period, was New York, the burden of proof rests on a party desiring to show a different one.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 36, 37; Dec. Dig. ⬅8.]

**4. DOMICILE ⬅10—INTENTION TO CHANGE—SUFFICIENCY OF EVIDENCE.**

In proceedings to collect a transfer tax, evidence *held* to show that decedent considered New York as his domicile after purchasing, for a particular purpose, the lease of a house in London, where he had been accustomed to spend a considerable part of his time.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. ⬅10.]

Appeal from Surrogate's Court, New York County.

In the matter of the estate of Frederick T. Martin. Proceeding by the Comptroller of the City of New York against the Metropolitan Trust Company. From an order of the surrogate, holding that a decedent's estate was not liable to transfer tax in New York (94 Misc. Rep. 81, 157 N. Y. Supp. 474), the Comptroller appeals. Order reversed, and matter remitted to the surrogate to fix the amount of tax.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

John B. Gleason, of New York City, for appellant.
John B. Pine, of New York City, for respondent.

SMITH, J. This order held that the estate of the decedent, Martin, was not liable to a tax in New York on its transfer on the ground that he was not a resident of the state.

Frederick Townsend Martin was born in Albany in 1849, and remained there until 1885, when he removed to New York City and rented a house there. Some time previous to 1890 he gave up this house, and thereafter when in New York he visited his sister or lived at the Murray Hill Hotel, and from 1907 on he occupied a suite of rooms at the Plaza. He always had the same rooms, and kept a few belongings there, but only paid for the suite during actual occupancy. Up to February, 1913, Mr. Martin always spent the winter, with the exception of an occasion trip to Palm Beach, in New York City. During the summer he went abroad, stopping in London hotels, and while in Paris living at an apartment which appears to have been furnished and maintained by Mr. Martin and his intimate friend, Mr. Sands.

In February, 1913, while Mr. Martin was in New York City, his brother, Bradley Martin, died in London, and Mr. Martin went over, returned to New York in April, but went back to England again in July, and remained there until his death in London in March, 1914. In December, 1913, his friend, Mr. Sands, died, leaving Mr. Martin his personal effects and $25,000 cash. Mr. Martin immediately gave up the Paris suite and purchased a house in England, to which he removed Mr. Sands' and his own furniture, and which he proceeded to fit up as a residence.

[1] The surrogate, in reaching his conclusion that Mr. Martin died resident abroad, relied almost solely on the circumstances of the purchase and outfitting of this house in London as a residence. Undoubtedly this London house was meant to be his residence in the sense that Mr. Martin intended to lodge there when in London. It is also true, as was said by the learned surrogate, that in many instances there is a difference between the legal intendment of the terms "residence" and "domicile" (Matter of Newcomb, 192 N. Y. 250, 84 N. E. 950), but in the matter of succession and transfer taxes the theory of the action of the taxing power renders the terms synonymous. In the case of succession the intestate's personalty is distributed according to the statute of distributions of the state of the domicile. Therefore that state which permits the inheritance is entitled to impose a duty on that privilege irrespective of the "residence"—using the term in its loose sense of temporary lodging—of the intestate. The same principle governs transfer under a will, as the law of the state of the domicile of the testator determines the validity of the will as a distribution of personalty.

Although in regard to other statutes the courts have often declared that the terms "residence" and "domicile" were synonymous, the question of the proper interpretation of the word "resident" in this statute does not seem to have been decided, but in numerous cases under the statute the surrogates have determined a person's residence by applying the principles of domicile and by relying on authorities as to domicile. Matter of Rothschild, 86 Misc. Rep. 364, 148 N. Y. Supp. 368; Matter of Wise, 84 Misc. Rep. 663, 146 N. Y. Supp. 789; Matter of

Rutherford, 88 Misc. Rep. 414, 150 N. Y. Supp. 734; Matter of Crosby, 85 Misc. Rep. 679, 148 N. Y. Supp. 1045.

[2, 3] It is clear that Mr. Martin's domicile up to the purchase of this London house was New York, and the burden of proof rests on the party desiring to show a different one. Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950. The only fact tending to show another is the purchase of the London house, and there are a number of circumstances to explain or offset the significance of this fact.

[4] In the first place, Mr. Martin seemed to consider himself under a duty to provide a home for Mr. Sands' collection, and in his letter of December 19, 1913, he refers to the London house as purchased solely for that purpose. The unfinished letter written just before his death to Mrs. Dewey is very significant as to his attitude toward his London house. It reads in part as follows:

"You will understand so well that it was a frightful disappointment to me to be forced by illness to give up my winter in my beloved land.

"I have bought the lease of a house in London for eight years, as Mr. Sands, who was my dear, devoted friend from boyhood, died in Paris last November quite suddenly, and left me a legacy to buy the lease of a house where I could keep all the furniture and pretty things that we had bought during the long years of our friendship. I look upon it only as a storehouse to keep these things in, as nothing would induce me to live in Paris after his death. My home is in New York, where I am happier than in any other city in the world.

"Just think of it, that I, an American, should have brought out a book that was the book of the year in England."

Then, on another occasion, he wrote:

"I think it is better for you to enter 6 Great Cumberland Place as my permanent address as trustee to Lord Craven"

—thus indicating that he considered it his permanent house only for a limited purpose.

Mr. Martin did nothing to transfer any of his business interests, etc., to London, and he allowed to stand his will previously made, which gave his residence as New York. On the whole, the evidence seems definitely to show that Mr. Martin still considered New York City as his domicile, and, taking into consideration Mr. Martin's wealth and habits of life, the purchase of a private residence in a city where he was accustomed to spend a considerable portion of his time does not have the significance that would attach to a like action by a person of a less cosmopolitan character.

Order reversed, with costs, and matter remitted to the surrogate, for the purpose of fixing the amount of the transfer tax. All concur.