Surrogate's Court, Westchester County, May, 1919.   [Vol. 107.

who by combining the several estates, rights, interests and possibilities that they represent or are authorized to speak for, can if they all wish to, patch up an absolute fee." Chapl. Susp. Alien. 16, § 39; Real Prop. Law, § 42; *Murphy* v. *Whitney,* 140 N. Y. 541, 546; *Wells* v. *Squires,* 117 App. Div. 502, 504; *Durkee* v. *Smith,* 90 Misc. Rep. 92, 100.

As there are persons in being by whom an absolute fee in possession can be conveyed there is no suspension of the power of alienation of the real property nor suspension of ownership of personal property. The widow, Margaret J. Stanton, and the five children, Edmond F. Stanton, Frances I. Stanton, Una M. Stanton, Grace Stanton and John Stanton, take all the property pursuant to the terms of the will.

Decreed accordingly.

---

Matter of the Application of WILLIAM SEYMOUR to Revoke Letters of Administration Granted to ANNA SEYMOUR on the Application for the Appointment of an Administrator of the Goods, Chattels and Credits which Were of JOHN J. SEYMOUR, Deceased.

(Surrogate's Court, Westchester County, May, 1919.)

Domicile — once established presumptively retained — executors and administrators — when motion to revoke letters of administration denied.

A man's domicile or residence of choice, once established, is presumptively retained until it is shown affirmatively that he either abandoned or changed it.

Decedent, born in Westchester county over sixty years ago, where he resided until 1909 when he and his wife took up their residence in another county for a period of two years, removed to Putnam county and lived there for about a year and a half, and then resided in Westchester county, where he registered as a voter from his boarding house, which was his

home.   After having spent the greater part of the winter of 1916 and 1917 in Westchester county and after having been operated on in a New York city hospital in the spring of 1917, he and his wife lived in the city of New York, and afterwards returned to Westchester county.  In the summer of 1917 he went to Putnam county and lived there with his sister until the time of his death which occurred in a hospital in Westchester county.   *Held*, that in the absence of evidence tending to show that decedent had any intention to abandon his residence in Westchester county, an application to revoke letters of administration granted therein will be denied.

APPLICATION to revoke letters of administration.

Strang & Taylor, for William Seymour.

Eugene F. McKinley, for Anna Seymour.

SLATER, S. In this proceeding William Seymour, a brother of decedent, prays that the decree of the Surrogate's Court dated and entered January 28, 1919, appointing Anna Seymour, the widow of decedent, as administratrix, be vacated under section 2569, because the letters were obtained by false suggestion of a material fact in that the residence of the decedent was wrongly stated as being in White Plains, Westchester county, N. Y.  Under section 2515 of the Code, the Surrogate's Court of each county has jurisdiction exclusive of every other Surrogate's Court to grant letters of administration where decedent was at the time of his death a resident of that county, whether his death happened there or elsewhere.  As to what constitutes residence sufficient to give the surrogate of a particular county jurisdiction is a matter of fact which the surrogate must determine according to the usual rules in such cases.  *Matter of Cruger,* 36 Misc. Rep. 477; *Matter of Jones' Estate,* 70 id. 154.

Residence must be equivalent to domicile and must

Surrogate's Court, Westchester County, May, 1919.   [Vol. 107.

include both actual residence and intention. *Dupuy* v. *Wurtz*, 53 N. Y. 556.

The courts have often declared that the terms " residence " and " domicile " were synonymous. In numerous cases under the statute the surrogates have determined a person's residence by applying the principle of domicile. *Matter of Rutherford,* 88 Misc. Rep. 44; *Matter of Martin,* 173 App. Div. 1.

The word " resident " as used in section 2515, subdivision 1, has been construed in the sense of inhabitant. *Matter of Walker,* 54 Misc. Rep. 177; *Bolton* v. *Schriever,* 135 N. Y. 65; *People ex rel. Driscoll* v. *Bender,* 82 Misc. Rep. 671.

Webster's Dictionary of the English language defines the word " inhabitant " as follows: " One who dwells or resides permanently in a place, or who has a fixed place of residence as distinguished from an occasional lodger or visitor;" " one who has a legal settlement in a town, city or parish — a resident."

Residence or inhabitancy is of course a matter of intention and is a question of fact. At the present time intention may be proved just as any other fact is proved, by any relevant evidence. In other words, intent is no longer a hidden mystery. *United States Trust Co.* v. *Hart,* 150 App. Div. 413.

The domicile of origin of the decedent was in Westchester county, decedent having been born in said county over sixty years ago, where he continued to reside until 1909. In 1909 he and his wife removed to Kingston, Ulster county, N. Y., and lived there for two years. In 1911 he removed from Kingston, his wife removed to New York city, and decedent removed to Putnam county and lived there for about one year and a half. In 1913 and 1914 he resided at Granite Springs in Westchester county. In 1916 he removed to White Plains, Westchester county, N. Y., in which

year he registered as a voter from his boarding house which was his home. The residence in White Plains remains the residence or domicile of the decedent until another is acquired. He spent the greater part of the winter of 1916 and 1917 in White Plains and in the spring of 1917 was removed to a New York hospital for an operation. After the operation he resided for a few weeks with his wife in New York city and afterwards returned to White Plains. In the summer of 1917 he went to Putnam county to live with his sister and was living there until the time of his death, which occurred in the Peekskill Hospital in Westchester county. Such residence and domicile of choice seems to be firmly established in the city of White Plains. Hiring of a room in a hotel may show the intent of the decedent. *Paddack* v. *Lewis,* 59 App. Div. 430; affd., 179 N. Y. 591.

In the absence of any further proof such domicile and residence so established is presumed to continue and the *onus* of proving the contrary is on those asserting change of such domicile or residence. *Matter of Newcomb,* 192 N. Y. 238; *People ex rel. Blocher* v. *Crowley,* 21 App. Div. 304; affd., 155 N. Y. 700.

It is alleged by the petitioner herein that decedent became and was at the time of his death a resident of Putnam county. The *onus* of making out this allegation undoubtedly rests upon the petitioner. There is nothing in the evidence taken before me to indicate the intention of the decedent to change his residence or domicile from the county of Westchester to the county of Putnam. The proof is that after the operation in New York city and his convalescence for a few weeks in the city he removed to the county of Westchester. Later he expressed the wish to go to the country to recuperate and he did go to the home of his sister for that purpose. He continued to keep his

securities in White Plains. He told one witness the weather was getting hot and " he was going up to the country to visit around among his friends." He told another witness " he was going to McAllister's " which was in Westchester county. During this visitation to his relatives in Putnam county he usually went to New York city and spent the Sunday with his wife, who was engaged there in nursing.

Evidence was not offered by the petitioner showing that decedent had an intention to abandon the residence or domicile in White Plains. A man's domicile or residence of choice, once established, is presumptively retained until it is shown affirmatively that it is either abandoned or changed by him. In this case such proof has not been offered by the petitioner.

I am of the opinion that the legal residence or domicile of the decedent was established in White Plains, Westchester county, and was not changed or abandoned, and so remained until the death of said decedent. Prayer of petitioner is denied.

Application denied.