In the Matter of the Estate of AUGUSTA H. LOHMANN, Deceased.

Surrogate's Court, New York County, October 3, 1935.

*Smith, Chambers & Clare* [*Frank W. Chambers* of counsel], for the petitioner.

*Joseph A. Cox*, for the public administrator.

FOLEY, S. The petitioner in this proceeding is the administrator appointed in the State of New Jersey. He applies for the revocation of letters of administration issued in this court to the public administrator of New York county. He further applies for the issuance of ancillary letters to him.

The sole question for determination is whether the decedent died a resident of Red Bank, N. J., or a resident of the county of New York? I hold that she died a resident of New York county.

Miss Lohmann was born in New York city in the year 1881. At the age of eighteen years she became a teacher in the public schools of New York city. She continued in active service for a period of thirty-five years until her death in September, 1934. It is undisputed that she lived with her mother in an apartment at 532 West One Hundred and Fifty-ninth street in New York county from the year 1914 until 1925 when her mother died. Thereafter, she continued to live in the same apartment until 1928. In that year she commenced to live with her sister, Mrs. Bonner, in a bungalow at Red Bank, N. J. Mrs. Bonner died in 1931. From 1931 until the date of the death of decedent it appears that she lived alone in this same bungalow. During the period, from 1928 until the date of her death, she retained the same apartment in New York city in which she had formerly lived with her mother. The rent of the one-story bungalow in Red Bank was twelve dollars per month. The rental of the six-room apartment retained by Miss Lohmann in New York city was forty dollars per month. This apartment appears to have been fully furnished, but there is no evidence to show that it was used or occupied by the decedent for the six years prior to her death.

All of her bank accounts were maintained in New York city. For a long period of years her safe deposit box was likewise maintained here. She had no bank account or safe deposit box in the State of New Jersey. It appears further that the New Jersey administrator, who is the undertaker who buried the decedent, took possession, without the authority of ancillary letters, of the sum of approximately $30,000 withdrawn from the bank accounts and from the safe deposit box in New York city. At the time of her death there was found among her possessions in the Red Bank house property and cash which did not aggregate more than $500. There remains a further asset of the estate here, consisting of approximately $10,000, due from the New York City Teachers' Retirement Fund. The purpose of the present application by the New Jersey administrator is to secure possession of this fund.

The respondent, the public administrator, contends that the conceded domicile of origin in New York county remained here and that the decedent never intended to abandon her residence in New York nor to establish a new domicile in New Jersey.

The burden of establishing a change of domicile rests upon the party who alleges the change. " In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail." (*Matter of Newcomb*, 192 N. Y. 238, 250.) It is a further rule that proof of a change of a domicile of origin must be clear and convincing.

In the present case there is some testimony that Miss Lohmann stated that she regarded her place of abode in New Jersey as her home. This evidence of her oral declarations is very unconvincing and unsatisfactory. It is entirely overcome by her repeated declarations in writing that her residence was at her apartment in West One Hundred and Fifty-ninth street in New York county. There is but a single written declaration in a period of six years that she resided in New Jersey. That statement was made in 1931 and was contained in the petition for the probate of the will of her sister. On the other hand, there are very many written declarations in the public school records almost to the very date of her death that she resided in New York. In every month of her school service she signed the time book giving her residence as 532 West One Hundred and Fifty-ninth street. This address was given by her at the end of the month of June, 1934, when she left for her summer vacation. She died in September of that year. Based upon the statements of the decedent as to her residence, her superior in charge of the public school in which she taught certified each month that the decedent was a resident of the State of New York and that she was not a non-resident. Her address in the civil list of the employees of the department of education was the same. That address was also listed for her with the Teachers' Retirement System. In each year she filed her income tax return and paid the tax as a resident of the State of New York and in each return, including that filed in 1934, she stated under oath that her residence was " 532 West 159th Street, New York City." In her bank accounts, exclusively maintained in New York city, the same residence was given and remained unchanged up to the time of her death.

This array of declarations amply sustains the contention of the public administrator that Miss Lohmann never intended to change her domicile. An additional and very significant fact is that in August, 1934, approximately one month before her death, she made definite arrangements with the landlord of her apartment in New York for its complete renovation. The apartment and its furnishings were to be cleaned, the fittings improved, new floors laid and other improvements made. She obligated herself to pay one-half the cost of these changes. Her share approximated $250. Strong evidence of a fixed intent to return to actual living in New York is thus shown and the temporary nature of her sojourn in New Jersey for a period of six years is demonstrated.

Under the leading cases in our State, mere absence from the State or county, even for a period of years, without an absolute and fixed intention to abandon the existing domicile, does not effect a change of domicile. (*Matter of Newcomb*, 192 N. Y. 238; *de Meli*

v. *de Meli*, 120 id. 485; *Dupuy* v. *Wurtz*, 53 id. 556; *United States Trust Co.* v. *Hart*, 150 App. Div. 413; *Matter of Frick*, 116 Misc 488; *Matter of Lydig*, 191 App. Div. 117; *Matter of Blumenthal*, 101 Misc. 83; affd., 186 App. Div. 944; *Cruger* v. *Phelps*, 21 Misc. 252; *Matter of Beattie*, 129 id. 241; affd., 222 App. Div. 729; *Matter of Bennett*, 135 Misc. 486.) The sojourn in some other place, even though it extends over a series of years, is deemed to be temporary and not a relinquishment of the original and established home (*People* v. *Platt*, 117 N. Y. 159, at p. 167.) " Mere change of residence although continued for a long time does not effect a change of domicile." (*Matter of Newcomb*, *supra*, at p. 250.) To complete the change of domicile " fact and intent must concur." (*de Meli* v. *de Meli*, 120 N. Y. 485.)

Intent has an important and essential bearing upon domicile. " It is always a distinct and material fact to be established." (*Matter of Newcomb*, 192 N. Y. 238, 251.) " A person cannot change his domicil by removal to a new dwelling-place without an intention to make the new dwelling-place his home." (Restatement of the Law of Conflict of Laws, American Law Institute, p. 36.) One's domicile cannot be changed for him without his intention or in spite of his intention.

In the present case the greater weight of the evidence supports the conclusion that Miss Lohmann never intended to change her domicile to New Jersey. The isolated declarations wherein she described her bungalow in Red Bank as her home are of little importance when compared with her repeated written declarations and conduct in maintaining her home and residence in New York. It is not unusual for a person to refer to a summer residence as a home despite the fact that there may not be the slightest doubt as to the domicile of the person being where his city home is located. The presumption of continuance of the domicile of origin stands unchanged by these isolated declarations.

Counsel for the New Jersey administrator argues that Miss Lohmann was under the false impression that as a teacher in the public schools of New York city she was required to maintain some form of residence in New York. There is no statute or by-law of the department of education which requires residence in New York city or State. The evidence, however, does not admit of the inference that Miss Lohmann was under the impression that residence in New York city was required. The payrolls in evidence show that the acting principal of the school regularly certified to the residence or non-residence of the various teachers. The names of certain of these teachers appear upon the payroll as being non-residents. With her long experience in the public school system and her

monthly signing of these payrolls, Miss Lohmann must have known of this situation. Moreover, she was extremely parsimonious and even miserly in her method of living. Her monthly salary was approximately $300. It is inconceivable, with her penurious disposition, that she would have continued to pay the rent of her New York apartment at the rate of forty dollars per month merely to support a colorable residence in New York city. The contrary inference of her determination to retain her home and domicile in New York is more logical, particularly when supported by her declarations to the same effect. If she desired to maintain a mere colorable residence here, it would have been possible for her to have hired a furnished room or made an arrangement for a New York address at a sum far less than the rental that she paid for her apartment and nearer the rent of the bungalow at Red Bank, which was twelve dollars per month. Sentiment for the city of her birth and loyalty arising from her long service in its school system most likely actuated her in the retention of her domicile here.

Much reliance has been placed by counsel for the New Jersey administrator upon the recent decision of the Court of Appeals in *Matter of Trowbridge* (266 N. Y. 283). In my opinion, however, that decision in great part supports the conclusion which I have reached. There the decedent was born in Connecticut and the entire case turned upon whether the evidence was sufficient to establish a change from the domicile of origin to the alleged domicile of choice in New York. The court held that the evidence was insufficient in law to prove the change. The *Trowbridge* case clearly was decided upon the specific facts involved.

The petitioner has failed to sustain the necessary burden of the proof cast upon him. The decedent at the time of her death was in fact and in law domiciled in New York county.

Submit decree on notice denying the application for the revocation of letters issued to the public administrator and further denying the application for ancillary letters of administration.