In the Matter of the Estate of MARGARET P. DALY, Deceased.

Surrogate's Court, New York County, August 15, 1942.

Goldwater & Flynn [Monroe Goldwater and Norman B. Kuklin of counsel], for James W. Gerard and H. Carroll Brown, as executors, etc.

Jerome M. Hirsch [Jerome M. Hirsch, John J. Fay and Michael B. Green of counsel], for the New York State Tax Commission.

FOLEY, S. The will of Margaret P. Daly, the testatrix, was duly admitted to probate by a decree of this court. In it was contained a provision reserving for determination the question of her residence and domicile. The petition of the proponents, the executors, in that proceeding alleged that the testatrix was at the time of her death a resident of Hamilton, County of Ravalli, State of Montana. The State Tax Commission of New York was brought into the proceeding and in its answer asserted that Mrs. Daly died a resident of the city and county of New York. By subsequent stipulation of the representatives of the estate and of the State, upon which an order was entered, the proceeding was amended so as to include within it a proceeding for the fixation of any estate tax which might be due the State of New York. The order specifically provided for the trial and determination of the issue as to whether the testatrix died a legal resident of and domiciled in Montana, or in New York.

Upon the trial of this issue, extensive oral and documentary evidence was submitted. It follows the conventional pattern of the proofs in cases of disputed domicile. The evidence covers the birth, marriage, the manner and places of living of the testatrix, her oral declarations as to her attitude, relationship and attachment to the houses where she lived, written declarations as to her addresses and residences, her charitable contributions in either State, the payment or non-payment of local income taxes and her holdings of property in the two States.

The question is of greater importance because of the very large sum payable by the estate in the event of a determination of domicile in either State. Mrs. Daly left a fortune of thirteen million dollars. If she was domiciled in New York, the estate tax payable to this State would approximate $1,950,000. If Montana is found to be her legal residence, the tax payable to that State would aggregate $1,600,000.

Mrs. Daly was born in Ohio in 1853. She died at Hamilton, Montana, on July 14, 1941. She was then eighty-seven years old.

In 1870 her parents and the other members of her family moved to Wyoming and then to Utah where she met her future husband, Marcus Daly, to whom she was married in Salt Lake City on September 20, 1872. Two of her children were born in Utah. In 1877 she moved to the city of Walkerville, Montana, which later became part of the city of Butte. Two other children were born at Butte.

In these early years of residence in Montana, Marcus Daly became interested in the copper mining and smelting industry in that State. He was one of the pioneers in these enterprises. He built the town of Anaconda. He established banks in Anaconda and Butte. He published a newspaper and built a theatre and hotel at Anaconda. He developed public utilities there. Out of these enterprises, and particularly from his large interest in copper, he accumulated the great fortune which he left at his death in 1900. Prior to 1887 he lived during part of the year at Butte and part at Anaconda. In that year he built a new house at Hamilton, Montana, on property which he had owned for some years previously. This house was rebuilt from time to time in the succeeding years and continued as the principal place of residence in Montana of Mrs. Daly in the last thirty-four years of her life.

At the time of his death Mr. Daly was indisputably a legal resident of Anaconda, Montana. Under the applicable rule of law, that place was the marital domicile and the legal residence of his wife, the testatrix here. (*Matter of Daggett*, 255 N. Y. 243.)

Our State Tax Commission concedes that she was a resident of Montana in 1900. It asserts that by her establishment, shortly after her husband's death, of places of residence at two successive locations in New York city she became domiciled in this State.

In several years prior to Mr. Daly's death he and his wife lived at a hotel in New York city during the winter months. Shortly before his death he leased a house at No. 725 Fifth avenue in this county. He never occupied it, but in late 1900 or early 1901 and in subsequent years his widow and certain of her children lived in it during the winter months. She continued to lease it and never owned any house in New York. In the summer she and her family occupied her home at Hamilton, Montana. The residence at Anaconda was sold in 1907.

The argument of the State Tax Commission that shortly after the death of her husband, Mrs. Daly established her domicile at No. 725 Fifth avenue, New York city, that she abandoned the matrimonial domicile in Anaconda, Montana, and treated the house at Hamilton, Montana as a mere country home finds no support in the evidence. The shift from the principal place of residence from Anaconda to Hamilton, Montana, is inconsequential. By no

affirmative act or decisive declaration was there any abandonment of the State of Montana as the place of her legal residence, whether between the period from 1900 to 1907 or in any subsequent year to the time of her death.

In the period from 1913 to 1917 she lived during the winters at a hotel in this city. In 1916 she leased an apartment at No. 907 Fifth avenue in this city and beginning early in 1917 and to the time of her death she customarily spent the winters there and the summers at Hamilton, Montana. Each year, almost without exception, she was accustomed to leave New York in early June to go to her residence in the west, remaining at Hamilton until middle or late October. It was her custom then to return to New York where she spent the subsequent months until the following June. In certain of these years her stays were interrupted by visits to California or other winter resorts.

Under the rules applicable to the determination of domicile, the burden of proving a change from a place once established to a place in another State, or to a territorial subdivision of the same State, is placed upon the party who asserts the change. (*Matter of Newcomb*, 192 N. Y. 238; *Matter of Trowbridge*, 266 id. 283; *Matter of Benjamin*, 176 Misc. 518; affd., 263 App. Div. 981; affd., 289 N. Y. 554; *Matter of Lohmann*, 157 Misc. 169; affd., 248 App. Div. 714; 1 Beale on Conflict of Laws, p. 245.) Since New York has conceded domicile of the testatrix in Montana in 1900, the burden of showing a change to our State must be borne by its representatives.

The surrogate holds that New York has failed to sustain this burden. He finds that Mrs. Daly was a legal resident of and domiciled at Hamilton, Montana, at the time of her death.

Instead of there being the slightest indication of any intent, and acts and conduct consummating intent, the overwhelming array of the evidence here shows a continued adherence to Montana as the predominant home and place of domicile over an uninterrupted period of forty-one years. Many witnesses have testified to her declarations of sentiment and attachment to that State. This testimony came from the mouths of her relations, friends and acquaintances.

The evidence presents a striking picture of the remarkable character, personality and vigor of Mrs. Daly. She was a resolute and determined woman and one not susceptible to any influence by those about her. She personally supervised the selection of the investments by which the fortune, originally left by her husband, was greatly increased throughout the years until her death. She personally managed the conduct of her residences in Montana and New York. She was a constant reader of good books and loved music. Her letters, even to a few days before her death, show a combination of business ability, culture and power of decision.

She displayed intense pride in the efforts which her husband had given to the successful up-building of Montana's industries. She established a memorial hospital in Hamilton which bears his name and contributed to it large sums during her lifetime and left a bequest to it of $100,000 in her will.

In 1904 she acted as the representative of Montana at the World's Fair at St. Louis. She was a long-continued communicant of her church at Hamilton. She was not a member of the congregation of any church in New York.

Very many witnesses testified to the fact that she declared orally that her Hamilton residence was her " home." By way of contrast she referred to her New York abode as " her apartment " or " the apartment." Not a single witness has been produced by the State of New York to contradict this array of oral declarations. No one has come forward to testify that she ever called either of her successive New York residences her home. This group of oral declarations convincingly evidences the treatment of her Montana residence as her real home and her " ' preeminent headquarters,' which is the essence of technical domicile." (Mr. Justice STONE in *Texas* v. *Florida*, 306 U. S. 398, 427.)

Again in a much greater number of her written declarations of residence contained in documents, she described it as of Hamilton, Montana, and in relatively few of them she described herself as of New York. Certain of the latter declarations were contained in applications for United States passports. These statements have been satisfactorily explained as having been made by her employee who prepared the application and without positive confirmation by herself. The greater number of subsequent written and oral declarations on domicile and residence in Montana overcome the fewer ones of an address or residence in New York.

In all of the years of Mrs. Daly's living in New York she never paid any taxes on personal property to this city or income taxes to this State. In this connection much stress is urged by New York upon a letter written by her on April 10, 1934, relating to the payment of income taxes in Montana. That State had enacted its first income tax law on March 16, 1933. It created a form of *normal* taxation. In January, 1934, the Legislature of Montana added a statute imposing a *surtax*. The very high rates contained in it would have levied a large assessment upon the income of Mrs. Daly. In the letter of April 10, 1934 just referred to, she transmitted her check in payment of her normal income tax. She referred to the legislation creating the surtax under the Montana Act of 1934 and refused to pay such surtax " for the reason that before the passage of said Act I had ceased to be a resident or

domiciled in the State of Montana." It has been conclusively shown by the evidence, however, that her statement was tentative only, and not final. The constitutionality of the surtax act had been attacked and was declared void by a decision of the highest court of Montana on May 12, 1934. (*Mills* v. *State Board of Equalization*, 97 Mont. 13; 33 P. [2d] 563.) The irritation of possible excessive taxes was thereby removed.

In a letter written by the decedent approximately one year later to an employee in Montana, she stated, " I expect to go to Montana early in June, it has been decided that I remain a citizen of Montana." In each succeeding year after 1934 until her death she regularly filed her State income tax return in Montana and paid the amounts due under them. She never paid any income tax in New York and constantly replied to inquiries from our State Tax Commission that she refused to do so because of the fact that she was a resident of the State of Montana and a non-resident of our State. Our State Tax Commission acquiesced in her contentions and no assessment for income tax was ever levied against her.

The State Tax Commission has claimed upon the trial that the provisions of our Tax Law, which subject a person, who resides in our State for seven months or more in any one year, to liability for income tax, would make such a person a resident of this State for estate tax purposes. (Tax Law, § 350, subd. 7.) Mrs. Daly did live for a period of seven months or more in a few years in this State. This contention of the Commission, however, is unfounded and is overruled. The provisions of the Tax Law have no application to a determination of domicile in an estate tax proceeding. They are confined exclusively to liability for an income tax.

The further claim of the Commission that Mrs. Daly lived a longer period in each of several years in New York than in Montana is likewise without controlling effect. The problem is not one of arithmetical addition. In its solution, the manner of living, and the actual intent and conduct of the person involved are the essential elements which lead to a proper conclusion.

Her continued attachment to her home State is also shown by the fact that she voted in Montana at the national elections in 1920, 1924, 1932, 1936 and 1940. In 1940 she registered on July twenty-third of that year and declared to the registration official and signed and verified the statements, that she had resided in Montana for sixty years and in the city of Hamilton for fifty years. She never voted in New York. While voting is not an exclusive and controlling test, it is of significance when accompanied with other elements of proof and particularly continued actual residence at the place where the voting occurs.

Her enduring interest in Montana was also shown by the larger amounts of contributions to charities in that State as compared with those made to New York charities over a period of years.

Her estate in Hamilton, Montana, comprised fourteen hundred acres. The house there was of very substantial extent. In it were kept many of the treasured possessions of her early married life and the keepsakes and portraits of her husband, her children and other relations. That estate cost her an average of $80,000 per year to operate and maintain. Her places of living in New York cost her far less.

Her social activities at her home in Montana were far greater than those at her house and apartment in New York.

The facts involved in cases of multiple domicile are necessarily different, and in the analysis, exact rules of law are seldom applicable to the special circumstances of the particular case. Well-established general principles, however, furnish tests for determination. Mr. Justice JACKSON in the recent case of *District of Columbia* v. *Murphy* (314 U. S. 441), states the questions which the trier of the facts must apply. He wrote: " All facts which go to show the relations retained to one's former place of abode are relevant in determining domicile. What bridges have been kept and what have been burned? Does he retain a place of abode there, or is there a family home with which he retains identity? Does he have investments in local property or enterprise which attach him to the community? What are his affiliations with the professional, religious, and fraternal life of the community, and what other associations does he cling to? How permanent was his domicile in the community from which he came? Had it long been a family seat, or was he there a bird of passage? Would a return to the old community pick up threads of close association? Or has he so severed his relations that his old community is as strange as another? Did he pay taxes in the old community because of his retention of domicile which he could have avoided by giving it up? Were they nominal or substantial?"

In the present proceeding the answers to these queries found in the evidence, in their application to the testatrix, all substantiate conclusively the finding of the retention of domicile in Montana.

The pertinent tests are differently phrased in section 24 of the Restatement of Conflict of Laws: " When a person who has capacity to acquire a domicil of choice has more than one home, his domicil is in the earlier home, unless he regards the second home as his principal home." If a person has more than one residence, only one can be a domicile. That principle must necessarily exist by which a domicile " can be determined in the case of plural residences

or homes." (Beale on Conflict of Laws, p. 186.) Professor BEALE clearly states the solution of the problem (p. 189): " Where there is a question as between two real homes, each of equal claim, apparently, to be considered the domicil, a further circumstance must be examined. As has been seen, a domicil once established persists until another is acquired in its place. When, therefore, a domicil exists in an actual home, and then a second home is acquired, but both the earlier and the later homes continue to be actual homes, nothing has happened that can put an end to the first domicil, since it has never ceased to be a home. It is impossible to acquire two domicils simultaneously, since, as has been seen, it is necessary for the acquisition of a domicil that one should be present in person at the place and no one can be in two places at the same moment. The true criterion, therefore, for determining the domicil where there are two homes, seems to be the determination of the order of acquisition of the two homes. The one which having been first acquired became a domicil remains the domicil, in spite of the establishment of the new home; and the second home, therefore, cannot be a legal domicil so long as the first one remains an actual home."

Where there are two actual and relatively equal homes, the earlier in point of time is the legal residence. The domicile of Mrs. Daly thus continued to be in Montana where concededly it was in the past. (*Matter of Martin*, 173 App. Div. 1; *Matter of Trowbridge, supra; Matter of Benjamin, supra; Matter of Lynch*, 170 Misc. 966; *Matter of Lohmann, supra.*)

The surrogate finds upon the evidence that Mrs. Daly never abandoned her domicile in Montana. She never became a legal resident of New York.

Submit supplemental decree entitled in the proceeding for the probate of the will and the proceeding for the fixation of the estate tax accordingly, with the specific finding and determination that the testatrix at the time of her death was not a legal resident of or domiciled in the State of New York.